UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10055-RWZ

GINA M. ALONGI, AS SHE IS ADMINISTRATOR,
INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL 4 PENSION FUND

v.

MOORES CRANE RENTAL CORP.

MEMORANDUM OF DECISION

December 17, 2012

ZOBEL, D.J.

Plaintiff, the Administrator of the International Union of Operating Engineers Local 4 Pension Fund ("the Fund"), filed a complaint seeking withdrawal liability from defendant Moores Crane Rental Corp. under the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001, et seq.  Defendant filed an answer in which it asserted counterclaims in three counts: unjust enrichment (Count 1), intentional misrepresentation/fraud (Count 2), and negligent misrepresentation (Count 3).  Plaintiff moves to dismiss these counterclaims.

I. Background

The Fund is a multiemployer pension plan as defined by ERISA §§ 3(7) and 4001(a)(3), 29 U.S.C. §§ 1002(37) and 1301(a)(3).  As administrator of the Fund, plaintiff is authorized to bring action on behalf of the Fund for the purpose of collecting

withdrawal liability.  29 U.S.C. §§ 1132(a)(3), 1401(b)(1), and 1451.

Defendant is a New Hampshire corporation that provides hydraulic crane services in the building and construction industry.  Beginning in late 2001 or early 2002, defendant employed members of the International Union of Operating Engineers Local 4 (the "Union") under a collective bargaining agreement requiring defendant to make contributions to the Fund on behalf of its covered employees.  Defendant asserts that prior to its joining the Fund, two "representatives of the Union and/or Fund" indicated that defendant could "try out" participating for three or four years and then leave the Fund.

On or about February 23, 2006, defendant made a complete withdrawal from the Fund within the meaning of ERISA § 4203, 29 U.S.C. § 1383.  Defendant claims that in January 2009, an attorney for the Fund represented that defendant's withdrawal liability would only be $48,000 and that the amount "may go away."  Nonetheless, on or about July 30, 2010, the Fund sent defendant a notice and demand letter for payment of withdrawal liability in the amount of $149,578, to be satisfied either by a lump sum payment of $196,178 by September 29, 2010, or by nine quarterly payments of $21,115.23 (the first due on September 29, 2010) and a final quarterly payment of $17,191.87.[1]

Defendant made a partial payment of $7,067.96 on September 28, 2010, and

---

[1] Defendant claims that it received two different notice and demand letters from the Fund, both dated June 30, 2010, asserting different amounts of alleged withdrawal liability. The first letter allegedly assessed defendant's liability as both $149,578 and $20,944 and requested quarterly payments of $7,067.96. The second "revised" letter indicated a liability of $149,578, with quarterly payments of $21,115.23. Plaintiff's complaint refers only to the second letter.

requested review of the withdrawal liability demand pursuant to ERISA § 4219(b)(2)(A) on or about October 25, 2010.  On November 17, 2010, the Fund sent defendant a notice of default on its first quarterly withdrawal liability payment and requested that defendant cure the shortfall of $14,047.27 within sixty days or the total balance would immediately become due.  Defendant did not pay the shortfall amount, but instead sent another partial payment of $7,067.96 on January 14, 2011.  Defendant made no additional payments thereafter.  On April 22, 2011, the Fund, through counsel, informed defendant that its request for review was denied.

Defendant did not initiate arbitration proceedings regarding the assessment of its withdrawal liability.  On January 10, 2012, the Fund filed suit against defendant under ERISA seeking to recover the payments owed.  Defendant filed an answer and counterclaims on March 19, 2012.  The Fund moved on April 23, 2012, to dismiss the counterclaims for failure to state a claim on the basis that defendant waived its counterclaims by failing to demand arbitration as required by ERISA § 4221(a)(1).

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a counterclaim must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In reviewing the motion, the court assumes the truth of all well-pled factual allegations in the counterclaims and draws all reasonable inferences in defendant's favor.  Genzyme Corp. v. Fed. Ins. Co., 622 F.3d 62, 68 (1st Cir. 2010).

## III. Discussion

Under the MPPAA, an employer that withdraws from a multiemployer pension plan is liable for its proportionate share of the plan's unfunded vested benefits. Giroux Bros. Transp. Inc. v. New England Teamsters and Trucking Indus. Pension Fund, 73 F.3d 1, 3 (1st Cir. 1996); 29 U.S.C. §§ 1381, 1391. The plan sponsor must assess, schedule, and demand withdrawal liability payment "[a]s soon as practicable after an employer's complete or partial withdrawal." 29 U.S.C. § 1399(b)(1). If an employer contests either the fact or amount of liability, the dispute must be submitted to arbitration. ERISA § 4221(a)(1), 29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration."). An employer waives the right to contest the assessment on the merits if it fails to initiate arbitration on a timely basis. Langone v. Bridgeport Steel Co., 757 F. Supp. 2d 62, 65 (D. Mass. 2010).

It is undisputed that defendant did not request arbitration regarding its withdrawal liability. The Fund argues that all of defendant's counterclaims concern disputes that must be raised in arbitration and are therefore waived.

**A. Count 1 (Unjust Enrichment)**

In Count 1, defendant asserts that there was an "unreasonably long" delay between its withdrawal from the Fund in 2006, the Fund's alleged representation in January 2009 that defendant's withdrawal liability would be $48,000 and would "go away," and the Fund's later assessment of withdrawal liability in July 2010. Defendant argues that this delay was prejudicial because it "could not save for or factor into its

4

subsequent business planning the large withdrawal liability ultimately assessed by the fund." As a result, defendant maintains that the Fund lacked the authority to "reassess" withdrawal liability in July 2010, and the Fund was thereafter unjustly enriched by defendant's two $7,067.96 payments.

The Fund replies that the alleged "$48,000.00" statement by its attorney did not constitute a valid notice of withdrawal liability under ERISA § 4219(b)(1)(A) and therefore its July 2010 assessment was not a "revision." Even if it were, the Fund contends that it was well within its rights under ERISA to revise the withdrawal liability assessment and, more importantly, that disputes over revisions must be resolved first through arbitration.

The Fund is correct. At bottom, Count 1 is a grievance about the timing and "revision" of the Fund's withdrawal liability assessment. Both issues are subject to the MPPAA's arbitration requirement. See Giroux Bros. Transp., Inc., 73 F.3d at 4 ("any dispute regarding the timeliness of the Fund's demand... is statutorily committed to arbitration in the first instance."); National Shopmen Pension Fund v. DISA Indus., Inc., 653 F.3d 573, 580-81 (7th Cir. 2011) (adopting the Pension Benefit Guaranty Corporation's view that "[i]f the employer contests the plan's right to revise its original assessment or issue a second assessment, this dispute, like other disputes involving withdrawal liability, must be resolved first through arbitration and then, if necessary, through the courts.") (quoting Pension Benefit Guaranty Corporation Opinion Letter 90-2). By failing to request arbitration, defendant has waived the arguments underlying its

unjust enrichment claim, and so Count 1 is dismissed.[2]

### B. Count 2 (Intentional Misrepresentation/Fraud) and Count 3 (Negligent Misrepresentation)

Counts 2 and 3 rest on a common set of allegations. Defendant asserts that Fund representatives intentionally and/or negligently misrepresented that defendant could "try out" participation for three or four years and then leave the Fund without facing withdrawal liability. Defendant claims that it relied on this misrepresentation in deciding to participate in the Fund. Defendant also alleges that in 2009, the Fund misrepresented that defendant faced only a small withdrawal liability that would "go away," and that defendant relied on this misrepresentation in continuing its business without making any provisions to pay a higher withdrawal liability assessment.

Unlike Count 1, these counterclaims do not truly dispute the fact or amount of withdrawal liability. The defendant here is not claiming that it does not owe withdrawal liability or that the assessment was improperly calculated.[3] Rather, the company contends that its participation in the Fund in the first place was secured through misrepresentations by the Fund and that its ability to pay the assessed withdrawal liability was likewise impaired by misrepresentations by the Fund. Such issues of fraud

---

[2] Defendant contends that the Fund lacked the authority to issue a "revised" withdrawal liability assessment and so the arbitration requirement was never "triggered" in the first place. This argument was addressed and rejected in National Shopmen Pension Fund, 653 F.3d at 579-81.

[3] While Count 2 does contain an allegation that the Fund's "revised" calculation of defendant's withdrawal liability "appears to be based on manufactured, or at least highly suspect numbers," that is not the crux of the claim. To the extent that defendant seeks to challenge the Fund's calculation of its withdrawal liability through Count 2, those arguments should have been raised in arbitration and will not be permitted in this action.

and misrepresentation fall outside the realm of the MPPAA's arbitration requirement. See Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund, 847 F.2d 113, 118-19 (3d Cir. 1988), cert. denied, 488 U.S. 1041 (1989) (statutory sections requiring arbitration "provide no basis for either adjusting or eliminating an assessment based on fraud or misrepresentation," and employer's claim "that it was fraudulently induced to become and remain a contributing member of the [pension fund] differs significantly from the type of highly technical MPPAA issues that the statute has assigned to arbitration."); Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc.-Pension Fund v. Centra, 983 F.2d 495, 506 (3d Cir. 1992) ("fraud and misrepresentation are not arbitrable issues under MPPAA"); EUSA-Allied Acquisition Corp. v. Teamsters Pension Trust Fund of Philadelphia & Vicinity, Civ. Action No. 11-3181 (JBS-AMD), 2012 WL 1033012, at *4-6 (D.N.J. Mar. 26, 2012) (claims of intentional and negligent misrepresentation are not subject to the MPPAA's arbitration provision). Accordingly, defendant's failure to seek arbitration does not bar the adjudication of Counts 2 and 3 in this court.

**IV. Conclusion**

The Fund's Motion to Dismiss Defendant's Counterclaims (Docket # 15) is ALLOWED as to Count 1 and DENIED as to Counts 2 and 3.

|     December 17, 2012     |           /s/Rya W. Zobel           |
|:---:|:---:|
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |